Thomas Young *et al.*

*v.*

Sarah A. M. Young *et al.*

*Filed at Springfield March 30, 1885.*

1. Rescission of contract—*in equity—inadequacy of consideration —natural love and affection, as a consideration.* A conveyance of land by a father to his son, not in fraud of creditors, may be sustained on the ground of natural love and affection, without the promise or payment of any money or other valuable consideration.

2. So the mere fact that a son did not pay or agree to pay the value of land conveyed to him by his father, can not defeat the title he acquired in that way, and affords no ground for setting the same aside, in equity.

3. Same—*rescission on the ground of fraudulent representations.* To justify the rescission of an executed contract of sale for fraud on the part of the grantee, it is not only necessary to show misrepresentations of facts by clear proof, but such misrepresentations must be about matters material to the interest of the grantor. If relating to an immaterial thing, or it is the expression of a mere matter of opinion, or relates to a fact equally open to the inquiry of both parties, a court of equity will not set aside the conveyance on the ground of fraud.

Writ of Error to the Circuit Court of Shelby county; the Hon. Jesse J. Phillips, Judge, presiding.

Mr. Anthony Thornton, and Messrs. Hamlin & Holloway, for the plaintiffs in error:

The value of the land is shown to be $2600. The consideration expressed in the last deed is $100. No money was paid, nor was there any agreement to pay any.

When a deed expresses a pecuniary consideration, and it is impeached for undue influence and fraud, the relation of parent and child can not be set up to sustain the deed. *Kerr on Fraud and Mistake,* 191, 192; *Clarkson* v. *Hanway,* 2 P. Wms. 203.

The consideration expressed is so inadequate as to show imposition and oppression. *McArtie* v. *Engart,* 13 Ill. 248.

Gross inadequacy of consideration is strong evidence of fraud. *Lowther* v. *Lowther,* 13 Ves. 103; *Underhill* v. *Harwood,* 10 id. 219; 1 Story's Eq. Jur. sec. 240; *Judge* v. *Wilkins,* 19 Ala. 765.

A false representation which influences a party, and causes him to make a contract, will avoid it, whether the party making the same knew its falsity or not. *Lockbridge* v. *Foster,* 4 Scam. 573; *Whelan* v. *Whelan,* 3 Cow. 537.

Where a deed is obtained without any consideration paid, and by deceit and false representations, the transaction can find no sanction in a court of justice. *White* v. *White,* 89 Ill. 464.

Messrs. MOULTON, CHAFFEE & HEADEN, for the defendants in error:

Even if the representations were false and fraudulent, it must appear that the party was influenced by them, relied on them, and would not have acted except by reason of such representations. *Douglass* v. *Littler,* 58 Ill. 342; *Tuck* v. *Downing,* 76 id. 71; *Fauntleroy* v. *Wilcox,* 80 id. 477.

Parol evidence to defeat a deed must be clear and convincing. *Wilson* v. *McDowell,* 78 Ill. 514.

The presumption is that all deeds are made in good faith and without fraud. *O'Neal* v. *Boone,* 82 Ill. 589.

The party must rely upon the representations. If the means are readily open to him to ascertain their truth or falsity, and he does not inform himself, he can not complain. 3 Scam. 32.

The declarations of parties have always been considered competent and important evidence to explain their acts and intentions. Redfield on Wills, (1st ed.) secs. 34-37, 42, 43, and note 39; *Taylor* v. *Kelly,* 31 Ala. 59; *Neal* v. *Potter,* 40 Pa. St. 000; *Uhlich* v. *Muhlke,* 61 Ill. 513; 1 Greenleaf on Evidence, sec. 108.

The violation of a parol promise to convey or reconvey land, will not constitute such a fraud as to take a case out

of the Statute of Frauds. *Rogers* v. *Simmons,* 45 Ill. 76; *Perry* v. *McHenry,* 13 id. 236.

A voluntary conveyance is good between the parties. *Willemin* v. *Dunn,* 93 Ill. 511; *Lowery* v. *Orr,* 1 Gilm. 85.

Mr. Justice Craig delivered the opinion of the Court:

This was a bill in equity, brought by John Young, against Sarah A. M. Young, and others, heirs at law of Samuel Young, deceased, to vacate and set aside a certain deed executed by the complainant on the 30th day of December, 1878, wherein certain lands in Shelby county, consisting of one hundred and thirty acres, were conveyed to Samuel Young. On the hearing, the court denied the relief prayed for by complainant, and entered a decree dismissing the bill, and plaintiffs in error, heirs at law of John Young, who died pending the litigation, have sued out this writ of error, for the purpose of reversing the decree of the circuit court.

The facts out of which this litigation arose are not complicated, and may be briefly stated. In 1873 a difficulty arose between complainant, John Young, and his wife, Gilla Young, and the latter instituted suit against her husband for divorce. On the 23d day of December of that year the parties met for the purpose of making a settlement, and an agreement as to a divorce and alimony was concluded between the parties, and for the purpose of carrying out that agreement, John Young and his wife conveyed a farm to one Joseph Prickett, containing two hundred acres of land. Prickett then conveyed to Gilla Young seventy acres of the land, and at the request of John Young the remaining one hundred and thirty acres was conveyed to his son, Samuel Young. The legal title to the land conveyed to Samuel remained in his name until December 30, 1878, when Samuel Young conveyed the land to John Young, and John Young, by general warranty deed, on the same day reconveyed to Samuel. After this last

conveyance, Samuel held the title to the land until 1881, when he died intestate, and it descended to his heirs, who were made defendants to the bill, in which, among other things, complainant prayed that they be decreed to convey to him.

The grounds relied upon in the amended bill to defeat the conveyance, are, in substance, as we understand them, inadequacy of consideration, false representations, and undue influence.

As respects the consideration for either of the deeds which were made to Samuel, it may be conceded that Samuel did not pay or agree to pay the value of the land; but that fact can not defeat the title which he acquired through the conveyance. Samuel did not pretend to purchase the lands of his father and pay their value. His title rests upon other grounds. John Young had the right to give the lands to his son, and where creditors are not complaining, natural love and affection are a sufficient consideration to uphold and sustain the conveyance,—and so far as the question of consideration is involved, this is the ground upon which the deeds from the father to the son must be sustained. If John Young saw proper to give the lands to his son, Samuel, he at the time not being indebted, he had the right to do so, and it was not necessary that a money consideration should pass, in order to sustain the conveyance.

We now come to the other ground relied upon to defeat the title,—false representations and undue influence. In December, 1873, when the first deed was made to Samuel, he was not present, and, so far as is shown by the evidence, he did not then, or at any time previous, use influence of any kind to induce his father to convey, or cause to be conveyed, the lands to him. The conveyance thus made was a voluntary act on behalf of John Young. No inducements were held out or promises made to influence him in the disposition of the lands. At the time this deed was executed, Young was sixty-nine or seventy years of age, but his age had in no

28—113 ILL.

manner impaired his mental faculties, and he was as capable then of transacting business as he was in the earlier part of his life. His age, therefore, had no effect upon the validity of the transaction. The same is true in regard to the condition of Young when he made the deed in 1878. During that fall he had been sick for a time, in Kansas, but we find no evidence in the record from which the conclusion can be drawn that he was incompetent to transact ordinary business.

But it is said that Samuel Young made to his father false representations to induce the execution of the deed, and that he also made promises which he never intended to fulfill. There was evidence introduced by complainant that Samuel said to his father, "If you deed the land to me, I will deed it back any time you want it." Also, that Samuel told his father that McKay was about to sue him for $600 or $700. The old man said, "I don't owe it, and I wo'nt pay it." Samuel said he would have to pay it if sued, and that the best thing the old man could do would be to convey his land to him, and save the trouble of going to Shelbyville. These, in substance, are the representations relied upon as false and fraudulent, to impeach the deed. In *Tuck* v. *Downing*, 76 Ill. 71, it was held: "To justify a court of equity in rescinding a contract of sale, it is not only necessary to establish the fact of misrepresentation by clear proof, but it must be about a material matter, or one important to the interest of the party complaining, for if it was of an immaterial thing, or if the party did not trust to it, or if it was a matter of opinion or fact equally open to the inquiries of both parties, and in regard to which neither could be presumed to trust the other, there is no reason for equity to interfere or grant relief, on the ground of fraud." If Samuel promised to deed the land back, what reliance was placed upon a mere naked verbal agreement of this character? The complainant was a man of ordinary intelligence, and doubtless placed no reliance

on such an agreement,—at least there is no evidence tending to show that he relied on the promise, or that he ever expected it to be fulfilled, as he repeatedly told witness after witness, after the deed was made, that the land was given to Samuel, and it should be his. Why make those declarations, if he relied upon a verbal promise to have the land deeded back to him? As to the other declaration relied upon to defeat the deed, it has no foundation to stand upon. McKay, who, it was alleged, was about to sue the complainant, resided less than two miles from Young, and by going to him the truth in regard to the threatened suit might have been ascertained, and it was the duty of Young to go to him and learn the truth, rather than rely on the statement of Samuel. It was a matter, as held in the case cited *supra*, equally open to the inquiries of both parties.

But, independent of these considerations, the testimony is clear and convincing that John Young had given the land to his son, and was not actuated by any declaration or statement that Samuel had made to him on the subject. From 1873 down to 1882, the complainant, at various times and in the presence of a number of different persons, declared that he intended his son, Samuel, to have the land,—and even after the death of Samuel he stated that the land belonged to his children, and they were to have it. As early as 1874, when complainant heard that Cross and Renfro, two sons-in-law, had said they would "break the deed" he had made to his son, he declared that he intended Samuel to have the land, and if the first deed was not good he would make one that was. This was repeated on several different occasions. Some ten or twelve witnesses testify to the declarations of complainant, before and after the making of the last deed, that he had given the land to Samuel, and he should have it. These often repeated declarations show, plainly, that the deed was not procured by fraudulent representations or promises of the grantee, but, on the other hand,

that complainant had of his own free will and accord conveyed the land to his son, Samuel.

We think the decree of the circuit court is fully sustained by the evidence, and it will be affirmed.

*Decree affirmed.*